252 P.3d 872 (2011)
STATE of Washington, Respondent,
v.
Timothy Sean MARTIN, Petitioner.
No. 83709-1.
Supreme Court of Washington, En Banc.
Argued October 21, 2010.
Decided May 19, 2011.
Vanessa Mi-jo Lee, Attorney at Law, Lila Jane Silverstein, Washington Appellate Project, Seattle, WA, for Petitioner.
Seth Aaron Fine, Attorney at Law, Mary Kathleen Webber, Snohomish County Prosecutor's Office, Everett, WA, for Respondent.
ALEXANDER, J.
¶ 1 We granted review of a decision of the Court of Appeals affirming Timothy Martin's conviction on three counts of first degree kidnapping and one count of second degree robbery. Martin's principal claim is that protections afforded him by article I, section 22 of the state constitution were violated when a deputy prosecutor, on cross-examination, posed questions to Martin that inferred Martin had tailored his testimony to be consistent with police reports, witness statements, and testimony presented by prior witnesses. We conclude that there was no constitutional violation and affirm the Court *873 of Appeals, albeit for reasons that differ from those given by the Court of Appeals.

I
¶ 2 Martin was charged in the Snohomish County Superior Court with three counts of first degree kidnapping and one count of second degree robbery. At trial, the alleged victim, Jessica Sobania, testified that upon placing her two children in her van at a Rite Aid parking lot, a man grabbed her from behind. According to Sobania the man, whom she identified at trial as Martin, told her to get in the van and start driving. Sobania said that although she was eventually able to escape from the van to get help, the attacker drove off with her children. Several hours after the incident, the police found the van parked in an industrial complex in Marysville. Sobania's children were in the van.
¶ 3 Martin admitted at trial that he had entered the van as part of a vehicle prowl. He testified that when he entered the van, it was parked near the aforementioned industrial complex and that no driver was present. Martin claimed that after he entered the van, he noticed that there were children in the backseat. He said that he then grabbed a purse and other items from the front seat and ran off.
¶ 4 On direct examination, Martin's lawyer asked Martin if knew what time he was at the Marysville industrial complex location. Martin responded, "I would guess 11:30, 12:00, 12:30 at night. From prior testimony, I know it had to be before one, because I heard people working in there, I heard lots of, you know, loud working." Verbatim Report of Proceedings (VRP) (Dec. 11, 2007) at 28.
¶ 5 During cross-examination, the State also asked Martin what time he entered the van. Martin again estimated that it was somewhere between 11:30 p.m. and 12:30 a.m. but indicated that he did not know for certain because he did not have a watch. The colloquy between Martin and the State continued:
A. I'm saying this time, because of prior testimony, that I heard, said that the shop was closed at 1:00 a.m., so it was before 1:00 a.m.
Q. And you've had the advantage of hearing all the testimony before you testified today, correct?
A. Obviously I have been sitting in that seat the whole time, yes.
Q. And you've also had the advantage of knowing what people were going to say ahead of time, wouldn't you agree with me?
A. No, I didn't know what anybody was going to say ahead of time.
Q. You didn't get to read the police reports?
A. I got to read the police reports.
Q. And you didn't get to read witness statements?
A. I read witness statements, yes.
Q. And you weren't allowed to bring those reports and statements with you to court?
A. I read everything involved, yes.
Q. And you've had what, a little over a year to concentrate on what people were going to say, didn't you?
Id. at 74-75. Martin's lawyer objected to the last question, asserting that the State was impermissibly commenting on Martin's constitutional rights to confer with counsel and remain silent. The trial court overruled the objection, stating that it did not see how the question was a comment on Martin's rights. The State then resumed its questioning:
Q. So in the pendency of this trial, you've had access of [sic] what the evidence was?
A. I've read the police reports, I've read your discovery, yes.
Q. And you've heard all the testimony so far?
A. So far, yes.
Q. And so you knew all that before you testified?
A. Yes.
Q. And so you knew exactly where your DNA [deoxyribonucleic acid] had been found in the car?
*874 Id. at 79. Martin objected to the question about DNA. After his objection was overruled, the State continued its questioning of Martin about his knowledge of the DNA evidence. At the conclusion of the trial, the jury found Martin guilty of all charges.
¶ 6 Following sentencing, Martin appealed his convictions to the Court of Appeals, Division One, arguing that the prosecutor's questions infringed on rights afforded him under article I, section 22 of the Washington Constitution. The Court of Appeals, after engaging in an analysis consistent with our decision in State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986), determined that "[t]he provisions of article I, section 22 implicated in this case . . . do not warrant an analysis independent from the Sixth Amendment." State v. Martin, 151 Wash.App. 98, 109, 210 P.3d 345 (2009), review granted, 168 Wash.2d 1006, 226 P.3d 781 (2010). It went on to affirm the trial court based on the United States Supreme Court's decision in Portuondo v. Agard, 529 U.S. 61, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000), in which that Court determined that a defendant's rights under the Sixth Amendment to the United States Constitution were not violated when a prosecutor called attention, during argument, to the fact that the defendant has had an opportunity to hear all of the witnesses testify and tailor his testimony accordingly. Martin, 151 Wash. App. at 105, 210 P.3d 345 (citing Portuondo, 529 U.S. at 64, 120 S.Ct. 1119).

II
¶ 7 Martin contends here, as he did at the Court of Appeals, that article I, section 22 affords defendants broader protection than does the Sixth Amendment. Accordingly, he asks us to hold that under the state constitution a prosecutor is prohibited from indicating in any way that a defendant tailored his or her testimony. Martin contends that permitting such conduct by prosecutors presents "an agonizing choice for the defendant, forcing him to waive fundamental rights in order to protect himself from the prosecutor's accusations of dishonesty." Am. Suppl. Br. of Pet'r at 24. He goes on to argue that while a defendant could "theoretically attempt to waive these rightsabsenting himself from his own trial or testifying before the State's witnessesthe court would be under no obligation to grant such waivers." Id. The State responds that the protections set forth in article I, section 22 are coextensive with those afforded by the Sixth Amendment. Thus, it contends that the Court of Appeals correctly determined that the questioning by the prosecutor in the instant case was permissible under the United States Supreme Court's decision in Portuondo. Br. of Resp't at 36.[1]
¶ 8 As noted above, the United States Supreme Court was faced in Portuondo with the question of whether a defendant's rights under the Sixth Amendment were violated when a prosecutor, during closing argument, called attention to the fact that the defendant had the opportunity to hear all of the witnesses testify and tailor his testimony accordingly. Portuondo, 529 U.S. at 63, 120 S.Ct. 1119. In Portuondo, there were two alleged victims, both of whom testified to the defendant's act of raping one of them and threatening both with a handgun. In his testimony, the defendant denied threatening either of the complainants and said that the sexual contact was consensual. During closing argument, the prosecutor made various statements that strongly suggested that the defendant's testimony was untruthful. One statement was as follows: "`[U]nlike all other witnesses . . . he gets to sit here and listen to the testimony of all the other witnesses before he testifies. . . . He used everything to his advantage.'" Id. at 64, 120 S.Ct. 1119 (quoting App. at 49). In concluding that the prosecutor's accusation of tailoring did not violate the Sixth Amendment, the Supreme Court said that the prosecutor's comments concerned only the defendant's "credibility as a witness, and were therefore in accord with [the] longstanding rule that when a defendant takes the stand, `his credibility may be impeached and his testimony assailed like that of any other witness.'" Id. at 69, 120 *875 S.Ct. 1119 (quoting Brown v. United States, 356 U.S. 148, 154, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958)).
¶ 9 The question before us, then, is whether in applying article I, section 22 of the Washington Constitution we should follow the reasoning of the United States Supreme Court in Portuondo. The answer to that question should be yes if we determine that a defendant's rights under article I, section 22 of our state constitution are coextensive with a defendant's rights under the Sixth Amendment to the United States Constitution. In seeking an answer to the question before us, we take note of the fact that this court has previously indicated that in other contexts, article I, section 22 is to be analyzed independently of the Sixth Amendment.[2] It is our view, however, that the prior cases in which we discussed the relationship between article I, section 22 and the Sixth Amendment are not determinative of the outcome here. That is so because we have never held that article I, section 22 is to be analyzed independently in the context presented by this case. It is incumbent on us, therefore, to make that determination based on the factors set forth in Gunwall and in the context of a case where it is alleged that the prosecutor's questioning of the defendant violated his constitutional rights to appear and defend, to testify, and to meet witnesses face to face.
¶ 10 In Gunwall, we determined that the following nonexclusive neutral factors are relevant in determining whether, in a given situation, the Washington State Constitution should be considered as extending broader rights to its citizens than the United States Constitution: "(1) the textual language; (2) differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern."[3]Gunwall, 106 Wash.2d at 58, 720 P.2d 808. Martin highlights the first four Gunwall factors in support of his assertion that article I, section 22 of the Washington Constitution provides greater protection than the Sixth Amendment with regard to a defendant's rights to be present, mount a defense, testify, and confront witnesses.
¶ 11 With respect to factors one and two, it is obvious that the text of the Sixth Amendment is not identical to article I, section 22. The provision in our state constitution reads, in pertinent part, that an accused shall have the right to
appear and defend in person, . . . to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face, . . . to have a speedy public trial . . . and the right to appeal in all cases.
Wash. Const. art. I, § 22. The Sixth Amendment, on the other hand, merely provides that an accused has the right "to a speedy and public trial, . . . to be confronted with the witnesses against him[, and] to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. Thus, it is readily observable that our state's confrontation clause provides several rights that are not specifically set forth in the Sixth Amendment, namely: the right to appear and defend *876 in person, the right to have a copy of the charge, the right to testify in one's own behalf, and the right to appeal in all cases. The Court of Appeals took note of the obvious textual differences between the respective provisions, acknowledging that "the Sixth Amendment does not expressly guarantee the defendant the right to attend trial and to testify as does article I, section 22." Martin, 151 Wash.App. at 110, 210 P.3d 345. It went on, however, to discount this difference, stating that the "distinction is of no moment," basing that conclusion on the fact that the United States Supreme Court has subsequently determined that the Sixth Amendment "necessarily" guaranteed these rights. Id. (citing Rock v. Arkansas, 483 U.S. 44, 52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (recognizing defendant's right to testify)); Illinois v. Allen, 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (recognizing defendant's right to attend trial) (citing Lewis v. United States, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892)). Although we agree with the Court of Appeals that the United States Supreme Court later found that these rights were guaranteed by the Sixth Amendment, the plain fact is that the rights were not explicitly set forth therein. As members of this court have noted, "the Sixth Amendment existed at the time the Washington Constitution was debated and we know the framers [of the Washington Constitution] chose different and specific words for use in article I, section 22." State v. Foster, 135 Wash.2d 441, 485, 957 P.2d 712 (1998) (C. Johnson, J., dissenting). We believe that when the framers of our state constitution drafted article I, section 22 and presented it to the people of the Territory of Washington for adoption they were aware of the linguistic differences between that section and the Sixth Amendment and assumed that the state provision provided rights that were not provided by the United States Constitution. See Robert F. Utter, Freedom and Diversity in a Federal System: Perspectives on State Constitutions and the Washington Declaration of Rights, 7 U. Puget Sound L.Rev. 491, 515 (1984). For that reason, we believe that the Court of Appeals erred in minimizing the significant textual differences between article I, section 22 and the Sixth Amendment, and in concluding that the first and second Gunwall factors did not weigh in favor of an independent analysis of the confrontation clause of our state constitution.
¶ 12 As to factor three, constitutional and common law history, we agree with Martin that little is known about what the drafters of article I, section 22 intended in 1889. Am. Suppl. Br. of Pet'r at 12 (citing Foster, 135 Wash.2d at 474, 957 P.2d 712).[4] However, we do know, as we have indicated above, that article I, section 22 of our state constitution explicitly recognized the right of defendants to appear, to present a defense, and to testify. It is reasonable to assume from that fact that the drafters of this provision believed that these rights are of great importance. We know, also, that shortly after statehood, this court acknowledged that article I, section 22 provided defendants the right to meet the witnesses against them face to face and to cross-examine those witnesses in open court. See Pet. for Review at 10 (citing State v. Stentz, 30 Wash. 134, 142, 70 P. 241 (1902), abrogated on other grounds by State v. Fire, 145 Wash.2d 152, 34 P.3d 1218 (2001)). Significantly, the federal constitution did not provide such broad protection to defendants at the time Washington became a state. See Am. Suppl. Br. of Pet'r at 13-14; Foster, 135 Wash.2d at 474, 957 P.2d 712 (Alexander, J., concurring and dissenting). Indeed, we note that in Portuondo, the United States Supreme Court observed that historically under federal law what defendants "said at trial was not considered to be evidence, since they were disqualified from testifying under oath." Portuondo, 529 U.S. at 66, 120 S.Ct. 1119 (citing 2 John Henry Wigmore, Evidence In Trials At Common Law § 579 (3d ed. 1940)). *877 In light of this history, we believe that the third Gunwall factor weighs in favor of an independent analysis.
¶ 13 Insofar as the fourth Gunwall factor is concerned, preexisting state law, it is significant that some Washington courts have held that the State violates the Sixth Amendment by implying that a defendant tailored his or her testimony. See, e.g., State v. Smith, 82 Wash.App. 327, 334-35, 917 P.2d 1108 (1996), abrogated by Portuondo, 529 U.S. 61, 120 S.Ct. 1119, as recognized in State v. Miller, 110 Wash.App. 283, 285, 40 P.3d 692 (2002); State v. Johnson, 80 Wash. App. 337, 341, 908 P.2d 900 (1996), abrogated by Portuondo, 529 U.S. 61, 120 S.Ct. 1119, as recognized in Miller, 110 Wash.App. 283, 40 P.3d 692. Although this fact is not dispositive of the question before this court, it does signal that Washington courts have on occasion favorably viewed the argument that Martin now presents.[5]
¶ 14 The State contends that an examination of preexisting state law leads to a conclusion that article I, section 22 and the Sixth Amendment are coextensive in the context of protections afforded a defendant on cross-examination. Br. of Resp't at 22. It points out that "Washington has a long history of permitting cross examination into matters which bear on the defendant's credibility." Id. at 23. In support of this position, it quotes the Washington Code of 1881, § 1067, which provided that a defendant may testify on his or her own behalf and that he or she "`shall be subject to all the rules of law relating to cross examination of other witnesses.'" Id. The State notes, additionally, that this court has held that a "`defendant in a cause has no special privileges when he offers himself as a witness on his own behalf. His credit as a witness may be tested and his testimony impeached in the same manner and to the same extent as that of any other witness.'" Id. at 24 (quoting State v. Hollister, 157 Wash. 4, 7, 288 P. 249 (1930)). Although these authorities support the view that Washington has long considered a defendant who chooses to testify at his own trial to be susceptible to the regular rules of cross-examination, we disagree with the State's contention that the fourth Gunwall factor supports its argument that our article I, section 22 should not be analyzed independently of its federal counterpart. We reach that conclusion because, as we stated in Gunwall, state law "may be responsive to concerns of its citizens long before they are addressed by analogous constitutional claims." Gunwall, 106 Wash.2d at 62, 720 P.2d 808. As indicated above, the Sixth Amendment was not deemed to afford a defendant the right to testify until 1961. See Ferguson v. Georgia, 365 U.S. 570, 596, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961). The fourth factor, like the first three, weighs in favor of an independent analysis. On balance, therefore, we are inclined to favor an independent analysis of the state constitution on the question before us.[6]

III
¶ 15 Having determined in this case that article I, section 22 should be analyzed independently of the Sixth Amendment, we must now decide whether the protections *878 afforded a defendant by article I, section 22 prohibit a prosecutor from indicating, via questioning, that a defendant has tailored his or her testimony to align with witness statements, police reports, and testimony from other witnesses at trial. As noted above, Martin contends that such conduct by a prosecutor violates the defendant's state constitutional rights to appear and defend at trial, to testify, and to meet witnesses face to face. He avers that if such conduct is permitted, defendants will be forced to choose between testifying, thereby facing potentially unfounded prosecutorial accusations of tailoring, or waiving the aforementioned rights to avoid such accusations. See Pet. for Review at 19. The State responds that the cross-examination here focused solely on Martin's credibility and did not implicate his confrontation rights as set forth in article I, section 22. Am. Suppl. Br. of Resp't at 11.
¶ 16 Although, for reasons stated above, we have concluded that the Portuondo decision does not control our analysis under article I, section 22, we believe it is appropriate to examine the entire opinion in order to determine if the reasoning of any of the justices can assist us in interpreting article I, section 22 of our state constitution. As noted above, a majority of the United States Supreme Court concluded in Portuondo that an indication of tailoring by the prosecutor during closing argument did not run afoul of the Sixth Amendment. Portuondo, 529 U.S. at 73, 120 S.Ct. 1119. The majority stated:
In sum, we see no reason to depart from the practice of treating testifying defendants the same as other witnesses. A witness's ability to hear prior testimony and to tailor his account accordingly, and the threat that ability presents to the integrity of the trial, are no different when it is the defendant doing the listening. Allowing comment upon the fact that a defendant's presence in the courtroom provides him a unique opportunity to tailor his testimony is appropriateand indeed, given the inability to sequester the defendant, sometimes essentialto the central function of the trial, which is to discover the truth.
Id. In a dissent, Justice Ginsburg essentially indicates that the opinion went too far. She criticized the majority for "transform[ing] a defendant's presence at trial from a Sixth Amendment right into an automatic burden on his credibility."[7]Id. at 76, 120 S.Ct. 1119 (Ginsburg, J., dissenting). She opined that a prosecutor should not be permitted to make such an accusation during closing argument because a jury is, at that point, unable to "measure a defendant's credibility by evaluating the defendant's response to the accusation, for the broadside is fired after the defense has submitted its case." Id. at 78, 120 S.Ct. 1119 (Ginsburg, J., dissenting). She went on to say, however, that she did not favor a complete ban on prosecutorial accusations of tailoring. She expressed the notion that the defendant's Sixth Amendment rights are not violated if a prosecutor poses questions to the defendant during cross-examination that infer the defendant tailored his or her testimony to match that of other witnesses. In that regard, she said:
The truth-seeking function of trials may be served by permitting prosecutors to make accusations of tailoringeven wholly generic accusations of tailoringas part of cross-examination. Some defendants no doubt do give false testimony calculated to fit with the testimony they hear from other witnesses. If accused on cross-examination of having tailored their testimony, those defendants might display signals of untrustworthiness that it is the province of the jury to detect and interpret. But when a generic argument is offered on summation, it cannot in the slightest degree distinguish the guilty from the innocent. It undermines all defendants equally and therefore does not help answer the question that is the essence of a trial's search for truth: Is this particular defendant lying to cover his guilt or truthfully narrating his innocence?
*879 Id. at 79, 120 S.Ct. 1119 (Ginsburg, J., dissenting). In other words, Justice Ginsburg distinguished a comment in closing argument that is "tied only to the defendant's presence in the courtroom and not to his actual testimony" from accusations made during cross-examination of the defendant. Id. at 77, 120 S.Ct. 1119 (Ginsburg, J., dissenting). The latter, she concluded, do not violate the Sixth Amendment.
¶ 17 We believe that Justice Ginsburg's view, that suggestions of tailoring are appropriate during cross-examination, is compatible with the protections provided by article I, section 22. It is during cross-examination, not closing argument, when the jury has the opportunity to determine whether the defendant is exhibiting untrustworthiness. Indeed, a "primary interest secured by the Confrontation Clause . . . is the right of cross-examination, `"the principal means by which the believability of a witness and the truth of his testimony are tested."'" Foster, 135 Wash.2d at 456, 957 P.2d 712 (quoting Kentucky v. Stincer, 482 U.S. 730, 736, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (quoting Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974))).[8]
¶ 18 Here Martin testified on direct examination about what time he was in the parking lot where the van was found as follows: "I would guess 11:30, 12:00, 12:30 at night. From prior testimony, I know it had to be before one." VRP (Dec. 11, 2007) at 28. In our judgment, this testimony opened the door to questions on cross-examination about whether he tailored his testimony to evidence presented by other witnesses. Prohibiting the kind of questioning that occurred here, where the defendant states that he based his testimony, in part, on testimony of other witnesses, would inhibit the jury's ability to judge credibility and thereby seek the truth. In sum, we believe that in a case such as the instant, where the credibility of the defendant is key, it is fair to permit the prosecutor to ask questions that will assist the finder of fact in determining whether the defendant is honestly describing what happened.
¶ 19 We conclude, therefore, that the State did not violate article I, section 22 by posing questions during cross-examination that were designed to elicit answers indicating whether Martin tailored his testimony.

IV
¶ 20 Martin asserts that if we conclude there was no constitutional violation, as we do, we should exercise our inherent supervisory power to create a rule prohibiting this kind of questioning. The Court of Appeals declined to exercise its inherent supervisory power, stating that "[b]ecause we find no constitutional infirmity in the prosecutor's questions, there is no principled basis on which to fashion the rule that Martin seeks." Martin, 151 Wash.App. at 116 n. 10, 210 P.3d 345. Martin correctly points out that Washington courts exercise inherent supervisory authority precisely when there is no constitutional infirmity, since there would be no need to exercise inherent supervisory power if there was a constitutional violation. See Pet. for Review at 13 (citing State v. Bennett, 161 Wash.2d 303, 306, 165 P.3d 1241 (2007)). We have previously invoked our inherent supervisory power for the purpose of furthering "sound judicial practice." Bennett, 161 Wash.2d at 318, 165 P.3d 1241. As noted above, cross-examination is the "`principal means by which the believability of a witness and the truth of his or her testimony are tested.'" Foster, 135 Wash.2d at 456, 957 P.2d 712 (internal quotation marks omitted) (quoting Stincer, 482 U.S. at 736, 107 S.Ct. 2658). If we were to exercise our supervisory power in the manner requested by Martin, we would be inhibiting the truth seeking function by diminishing the jury's ability to obtain information relevant to the defendant's credibility. This would not be a "sound judicial practice." Bennett, 161 Wash.2d at 318, 165 P.3d 1241.

*880 V
¶ 21 In conclusion, we hold that in the context of prosecutorial suggestions of tailoring, article I, section 22 is more protective than the Sixth Amendment. For this reason, the United States Supreme Court's decision in Portuondo is not controlling in this case. We conclude, however, that our state constitution was not violated when a deputy prosecutor, in response to testimony Martin had given on direct examination, asked Martin if he had tailored his testimony to conform to testimony given by other witnesses. We, therefore, affirm the Court of Appeals, albeit for reasons that differ from those relied on by that court.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, CHARLES W. JOHNSON, SUSAN OWENS, and JAMES M. JOHNSON, Justices.
STEPHENS, J. (concurring/dissenting).
¶ 22 I concur in the result reached by the majority, but solely on the basis of harmless error. I agree with the dissent that article I, section 22 of our state constitution does not permit the State to suggest the defendant has tailored his testimony when exercising his trial rights. This is not proper impeachment. Dissent at 883-84. I share without reservation the dissent's observation that "`[p]rosecutorial comment suggesting that a defendant tailored his testimony inverts [a defendant's fair trial rights], permitting the prosecutor to punish the defendant for exercising that which the Constitution guarantees.'" Id. at 883 (quoting State v. Daniels, 182 N.J. 80, 98, 861 A.2d 808 (2004)). I agree with the majority's result, however, because I believe the impermissible cross-examination that occurred here was harmless error. I write separately to express that view and to offer some thoughts on the question of why article I, section 22 is more protective in this context than its federal counterpart.

Article I, Section 22
¶ 23 The majority correctly invokes State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986), in order to determine whether article I, section 22 should be interpreted independently of the Sixth Amendment to the United States Constitution. Majority at 875-76.[1] Having concluded the provision should be interpreted independently, the majority then entirely abandons Gunwall in considering the meaning of article I, section 22 in this context. But the Gunwall factors are more than simply a key to unlock the door of independent state analysis. They remain relevant as interpretative guides, providing a framework for a principled constitutional analysis of the provision at issue. See Gunwall, 106 Wash.2d at 62-63, 720 P.2d 808;[2]see generally Hugh D. Spitzer, New Life for the "Criteria Tests" in State Constitutional Jurisprudence: "Gunwall is DeadLong Live Gunwall!," 37 Rutgers L.J. 1169 (2006).
¶ 24 The wisdom of employing the Gunwall factors as interpretive guides in determining the scope of state constitutional protections is evident in what the majority's analysis lacks. After concluding article I, section 22 should be interpreted independently from the Sixth Amendment, the majority simply endorses Justice Ginsburg's dissent in Portuondo v. Agard, 529 U.S. 61, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000), as to the scope of that right. Majority at 879. Of *881 course, Portuondo dealt solely with the protections offered by the Sixth Amendment. Such a truncated analysis makes it hard to divine for what reason and to what end article I, section 22 is more protective than the Sixth Amendment.
¶ 25 I would resolve this question by returning to the relevant Gunwall criteria. First and foremost, I believe an examination of our common law history and preexisting state law demonstrates that article I, section 22 does not allow the State to broadly suggest a defendant is tailoring his testimony based on the exercise of his right to attend trial and hear the witnesses against him. Unlike other states, Washington has never required a defendant to present his testimony prior to other witnesses. See Portuondo, 529 U.S. at 66, 120 S.Ct. 1119 (citing 3 John Henry Wigmore, A Treatise on the System of Evidence in Trials at Common Law §§ 1841, 1869 (1904); Ky. Stat., ch. 45, § 1646 (1899); Tenn.Code Ann., ch. 4, § 5601 (1896)). We have declined to build into our trial process the inference that a defendant will tailor his testimony if given the opportunity to testify after other witnesses. Instead, we have announced time and again a deep respect for the rights of the accused. See, e.g., State v. Robinson, 138 Wash.2d 753, 758-59, 982 P.2d 590 (1999) (explaining the defendant's right to testify at trial is expressly protected in our state constitution and is fundamental); State v. Jones, 168 Wash.2d 713, 720, 230 P.3d 576 (2010) (noting that a "defendant's right to an opportunity to be heard in his defense, including the rights to examine witnesses against him and to offer testimony, is basic in our system of jurisprudence"); State v. Easter, 130 Wash.2d 228, 236, 922 P.2d 1285 (1996) (observing that a defendant's right against self-incrimination includes the right not to testify at trial).
¶ 26 We have not demeaned these rights by allowing an inference that the only way to secure the defendant's truthful testimony is to require him to testify before any other witness. Thus, our state common law history and preexisting state law support a reading of article I, section 22 that rejects the unfettered suggestion of tailoring by the prosecution.[3]
¶ 27 This conclusion becomes redoubtable when one considers the difficulty of drawing meaningful constitutional lines in this area. The prosecution's suggestion of tailoring applies regardless of whether the defendant's testimony "open[s] the door." See majority at 879.[4] Even when the defendant does not testify, his defense is still open to accusations of tailoring insofar as the defendant is able to review all of the evidence against him and observe witnesses at trial in preparing his defense. The majority does not suggest a principled basis to limit the inference of tailoring to cross-examination of the defendant, even setting aside for a moment the question of whether this would, in turn, burden a defendant's right to testify. A moment's reflection on what the inference of tailoring suggests makes clear that there is no practical, let alone constitutionally meaningful, limit to the door the majority believes was opened in this case. I wholly agree with Justice Sanders's well-reasoned conclusion that article I, section 22 is incompatible with inferences of tailoring based on the defendant's exercise of his trial rights.

Harmless Error
¶ 28 Although I agree with the dissent that article I, section 22 provides more protection *882 against accusations of tailoring than the majority is willing to recognize, I do not agree that the error here was harmful.
The State bears the burden of showing a constitutional error was harmless. We find a constitutional error harmless only if convinced beyond a reasonable doubt any reasonable jury would reach the same result absent the error . . . and where the untainted evidence is so overwhelming it necessarily leads to a finding of guilt.
Easter, 130 Wash.2d at 242, 922 P.2d 1285 (citation omitted). Under this standard, the error in this case was harmless. The untainted evidence overwhelmingly implicated Martin in this crime. Samples of his DNA [deoxyribonucleic acid] found in the stolen van were consistent with a lengthy period of contact, undermining Martin's defense that he happened briefly upon the abandoned van while vehicle prowling. Verbatim Report of Proceedings (VRP) (Dec. 7, 2007) at 162. A police sketch of the victim's assailant based on details provided by the victim looked similar to a picture of the defendant taken shortly before the crime was committed. 2 VRP (Dec. 4, 2007) at 35-37, 100, 111-12; Exs. 28, 36, 66. Thus, while there was evidence that the victim initially identified a different suspect, significant physical evidence and testimony implicated Martin. And this evidence was untainted by the State's improper suggestion that Martin had tailored his testimony. I therefore concur in the result to affirm Martin's conviction.

Conclusion
¶ 29 Article I, section 22 offers greater protection than its federal counterpart in this context. The scope of that protection may be determined by looking to our own state's common law history and preexisting state law. Respect for the rights of the accused under article I, section 22 should compel this court to hold that accusations of tailoring based on the defendant's exercise of his trial rights are improper. Because the constitutional error here was harmless, however, I concur in the majority's result.
WE CONCUR: TOM CHAMBERS and MARY E. FAIRHURST, Justices.
SANDERS, J.[*] (dissenting).
¶ 30 I firmly agree with the majority that article I, section 22 of the Washington Constitution affords greater protection in this instance than the Sixth Amendment to the United States Constitution. However, I cannot join the majority's ill-reasoned decision which interprets article I, section 22 as being compatible with inferences of tailoring during cross-examination.

ANALYSIS
¶ 31 We are asked to decide whether the State may attack a defendant's credibility by implicitly criticizing the defendant for exercising the constitutional rights to review pretrial evidence against him, be present at trial, and confront the witnesses against him.

I. Article I, Section 22 Guarantees Defendants Fundamental Rights
¶ 32 A defendant is a unique type of witness. "[A] criminal defendant is not simply another witness. Those who face criminal prosecution possess fundamental rights that are `essential to a fair trial.'"[1]State v. Daniels, *883 182 N.J. 80, 97, 861 A.2d 808 (2004) (quoting Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)). Article I, section 22 of the Washington State Constitution guarantees a criminal defendant "the right to appear[[2]] and defend in person, or by counsel, . . . to testify in his own behalf, [and] to meet the witnesses against him face to face." This bundle of rights provides the basis of a fundamentally fair trial. The "[p]rosecutorial comment suggesting that a defendant tailored his testimony inverts those rights, permitting the prosecutor to punish the defendant for exercising that which the Constitution guarantees."[3] Daniels, 182 N.J. at 98, 861 A.2d 808.
¶ 33 During cross-examination, the prosecutor here twice emphasized the defendant's exercising his constitutional right to review the evidence against him and be present at trial.[4] The majority characterizes the prosecution's tailoring arguments as specific, as opposed to generic, majority at 879 n. 8; this distinction, however, has little practical value inasmuch as the approaches of both the majority and dissent in Portuondo afford no meaningful protection of a criminal defendant's constitutional bundle of rights. See State v. Mattson, 122 Hawai`i 312, 343, 226 P.3d 482 (2010) (Acoba, J., dissenting).[5] The prosecutor impugned Martin's credibility by pointing out Martin exercised his constitutional right to review pretrial discovery materials that the prosecution had a constitutional duty to furnish him. CrR 4.7. And by referencing the defendant's presence at trial the prosecution asked the jury to draw an unreasonable inference regarding the defendant's alleged lack of credibility. I do not suggest the prosecution may not question a defendant on cross-examination regarding his testimony. "[I]f there is evidence in the record that a defendant tailored his testimony, the prosecutor may cross-examine the defendant based on that evidence. However, at no time during cross-examination may the prosecutor reference the defendant's attendance at trial or his ability to hear the testimony of preceding witnesses." Daniels, 182 N.J. at 99, 861 A.2d 808.
*884 ¶ 34 Article I, section 22 explicitly guarantees defendants the right to exercise their fair trial rights. The prosecution cannot ask a jury to draw an adverse inference, i.e., impeach his credibility, from the defendant's exercise of a constitutional right.[6] These comments imply all defendants are less believable simply as a result of exercising these rights;[7] the exercise of this constitutional right is not evidence of guilt. These allegations demean "the truth-seeking function of the adversary process."[8]Portuondo v. Agard, 529 U.S. 61, 76, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000) (Stevens, J., concurring); id. at 79 n. 1, 120 S.Ct. 1119 (Ginsburg, J., dissenting). All criminal defendants alike have a constitutional right to be present at trial. It would therefore be unreasonable for a prosecutor to question a defendant's credibility based on his mere presence at trial.[9] Permitting accusations of tailoring would chill the willingness of defendants to testify. See J. Fielding Douthat, Jr., A Right to Confrontation or Insinuation? The Supreme Court's Holding in Portuondo v. Agard, 34 U. Rich. L.Rev. 591, 612-13 (2000) ("`[The inference] is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly.'" (alteration in original) (quoting Griffin v. California, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965))). This undermines the core principle of our criminal justice systemthat a defendant is entitled to a fair trial. See Daniels, 182 N.J. at 98, 861 A.2d 808. The court therefore should prohibit all accusations of tailoring at any stage of the trial, including cross-examination and summation, that impermissibly burden a defendant's right to be present at trial, and confront the witnesses against him.[10] This rule leaves ample opportunity for the prosecution to impeach the credibility of a defendant on the basis of specific instances of inconsistent testimony, and allows the trier of fact to draw its own reasonable inferences based on the evidence, rather than rely, even in part, on accusations that the defendant was able to shape his testimony simply because the defendant was present, as he had a right to be, at his own trial. See Mattson, 122 Hawai`i at 329, 226 P.3d 482 (Acoba, J., dissenting).

II. Harmless Error
¶ 35 Constitutional error is "subject to harmless error analysis" where the error was harmless beyond a reasonable doubt. State v. Watt, 160 Wash.2d 626, 633, 160 P.3d 640 (2007) (citing Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). If, without the constitutionally prohibited remarks, honest, fair-minded jurors *885 might have acquitted Martin, the error cannot be deemed harmless. Chapman v. California, 386 U.S. 18, 25-26, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
¶ 36 The majority acknowledges "the credibility of the defendant is key." Majority at 879. Martin's credibility was the linchpin of his defense. The State's physical evidence was compelling but was easily explained by Martin's testimony, if the jury believed him. Evidence other than Martin's testimony also called the State's theory into question.[11] The prosecution asked the jury to draw an adverse inference from the exercise of Martin's constitutional rights; this tainted the credibility of Martin's entire testimony. We cannot know if the jury would have found Martin more credible absent the prosecutor's misconduct. Because a reasonable possibility exists that the verdict might have been more favorable to the accused in the absence of this error, the error cannot be harmless.

CONCLUSION
¶ 37 I reject an interpretation of our state constitution that presents the defendant with a Hobson's choice: exercise the right to be present at trial and testify, or sequester himself in order to prevent the taint of a tailoring accusation. I dissent.
NOTES
[1] The State has not argued that the defendant waived his right to raise the issue by failing to raise it at trial.
[2] See State v. Pugh, 167 Wash.2d 825, 835, 225 P.3d 892 (2009) (holding that statements made by defendant's wife during 911 call qualified as res gestae and, therefore, did not implicate the state confrontation clause, but noting in dictum that "a Gunwall analysis is no longer necessary" because "an independent analysis applies" to article I, section 22); State v. Shafer, 156 Wash.2d 381, 391, 128 P.3d 87 (2006) (holding that RCW 9A.44.120, the child hearsay statute, complies with article I, section 22 and noting that a majority of our court held in Foster that article I, section 22 is subject to an independent analysis); State v. Foster, 135 Wash.2d 441, 473, 481, 957 P.2d 712 (1998) (a majority of our court concluded that the state constitution's confrontation clause must be given an interpretation independent of that given the Sixth Amendment's confrontation clause and indicated that in some other contexts the state provision is more protective than the Sixth Amendment right) (Alexander, J., concurring and dissenting) (C. Johnson, J., dissenting).
[3] In Gunwall we noted that these criteria are useful in ensuring that if we independently analyze a state constitutional provision, we "will consider these criteria to the end that our decision will be made for well founded legal reasons and not by merely substituting our notion of justice for that of duly elected legislative bodies or the United States Supreme Court." Gunwall, 106 Wash.2d at 62-63, 720 P.2d 808.
[4] Unfortunately, minutes of Washington's constitutional convention and newspaper accounts of the proceedings there are the only contemporary records of the debates that took place at the convention. The service of shorthand was secured and those reporters took down the full text of speeches and arguments at the convention. The congressional appropriations did not, however, cover the costs of transcribing the shorthand notes and sadly they were destroyed. Charles M. Gates, Foreword to The Journal of the Washington State Constitutional Convention 1889, at vi-vii (Beverly Paulik Rosenow ed., 1962).
[5] Martin also points out that Washington has never required a defendant to testify prior to presenting his or her own witnesses, whereas other states have attempted to limit defendants in this way. Pet. for Review at 10 (quoting Portuondo, 529 U.S. at 66, 120 S.Ct. 1119, noting that some states "`attempted to limit a defendant's opportunity to tailor his sworn testimony by requiring him to testify prior to his own witnesses'" (citing 3 John Henry Wigmore, Evidence §§ 1841, 1869 (1904); Ky. Stat., ch. 45, § 1646 (1899); Tenn.Code Ann., ch. 4, § 5601 (1896))). Martin's argument under this Gunwall factor, an argument based on the lack of a requirement in preexisting Washington law that a defendant testify first, does not bolster his position. Moreover, we note that in Brooks v. Tennessee, 406 U.S. 605, 612-13, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), the United States Supreme Court held it was unconstitutional to require defendants to testify prior to hearing other evidence.
[6] Although Martin does not address the fifth Gunwall factor, we have held that it supports an independent state constitutional analysis in every case and have consistently stated that our "consideration of this factor is always the same; that is that the United States Constitution is a grant of limited power to the federal government, while the state constitution imposes limitations on the otherwise plenary power of the state." Foster, 135 Wash.2d at 458-59, 957 P.2d 712 (citing Gunwall, 106 Wash.2d at 66, 720 P.2d 808).
[7] In support of her conclusion, Justice Ginsburg cited a Washington case, discussed above, as an example of a state court that "found it improper for prosecutors to make accusations of tailoring based on the defendant's constant attendance at trial." Portuondo, 529 U.S. at 83 n. 5, 120 S.Ct. 1119 (Ginsburg, J., dissenting) (citing Johnson, 80 Wash.App. 337, 908 P.2d 900).
[8] We note that the majority and dissent in Portuondo agreed that generic accusations of tailoring are permissible, although as we have discussed, there was disagreement about whether such accusations are permitted during closing argument. Because the accusation of tailoring in this case was specific rather than generic, we do not decide whether generic accusations are prohibited under article I, section 22.
[1] I do note that the majority's discussion of the textual differences between the Sixth Amendment and article I, section 22namely that article I, section 22 contains more explicitly stated rights than the Sixth Amendmentshould be read with caution. It could give rise to the belief that more text equals more rights or conversely that less text connotes fewer rights. Majority at 876. We must be careful not to attach undue significance to mere differences in syntax and verbiage between our state constitution and the federal constitution. It is often the case in constitutional drafting that there are various ways to convey the same meaning. The text must be understood in its historical context.
[2] In Gunwall we noted that the nonexclusive criteria are useful not only in determining whether an independent analysis is warranted, but also in "helping to insure that if this court does use independent state constitutional grounds in a given situation, it will consider these criteria to the end that our decision will be made for well founded legal reasons and not by merely substituting our notion of justice for that of duly elected legislative bodies or the United States Supreme Court." Gunwall, 106 Wash.2d at 62-63, 720 P.2d 808.
[3] I agree with the dissent that there is no constitutional bar to impeaching a testifying defendant on cross-examination, but proper impeachment cannot be based on the mere exercise of constitutional trial rights. Dissent at 883-84. Moreover, on this record, the majority's distinction between generic and specific inferences of tailoring is difficult to maintain, as the prosecutor's cross-examination went well beyond Martin's specific testimony concerning the time the shop closed; it implicated generally his ability to receive discovery, attend trial, and hear the witnesses. See Verbatim Report of Proceedings (Dec. 11, 2007) 74-75, 79.
[4] See Wash. Supreme Court Oral Argument, State v. Martin, No. 83709-1 (Oct. 21, 2010), at 35 min., 16 sec. through 37 min., 13 sec., video recording by TVW, Washington State's Public Affairs Network, available at http://www.tvw.org. (State's acknowledgment that the use of a negative inference does not depend on the defendant opening the door to impeachment, and acknowledging that no distinction should be drawn between whether the negative inferences arise during cross-examination versus during closing argument).
[*] Justice Richard Sanders is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).
[1] On at least three occasions, the Supreme Court "has elevated the rights of testifying defendants above legitimate state concerns about the reliability of their testimony." Alexander G.P. Goldenberg, Interested, But Presumed Innocent: Rethinking Instructions on the Credibility of Testifying Defendants, 62 N.Y.U. Ann. Surv. Am. L. 745, 768 (2007); Brooks v. Tennessee, 406 U.S. 605, 611, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) (striking down a rule requiring defendants testifying on their own behalf to do so prior to all other witnesses and holding the Fifth Amendment privilege against self-incrimination can only be exercised effectively once a defendant has had the opportunity to hear other witnesses); Geders v. United States, 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (holding sequestering a testifying defendant and preventing him from consulting with his attorney during a trial recess violated his Sixth Amendment right to counsel); Rock v. Arkansas, 483 U.S. 44, 61-62, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (holding defendant's right to testify includes the right to do so after hypnosis, a privilege that may be denied to other witnesses).
[2] The Supreme Court has described the right of defendants to be present at their trials as "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause." Illinois v. Allen, 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).
[3] The testifying defendant must decide to either present himself at trial, and risk being discredited by his presence, or absent himself from trial and avoid the risk.
[4] A: . . . . I'm saying this time, because of prior testimony, that I heard, said that the shop was closed at 1:00 a.m., so it was before 1:00 a.m.

Q: And you've had the advantage of hearing all the testimony before you testified today, correct?
A: Obviously I have been sitting in that seat the whole time, yes.
Q: And you've also had the advantage of knowing what people were going to say ahead of time, wouldn't you agree with me?
A: No, I didn't know what anybody was going to say ahead of time.
Q: You didn't get to read the police reports?
A: I got to read the police reports.
Q: And you didn't get to read witness statements?
A: I read witness statements, yes.
Q: And you weren't allowed to bring those reports and statements with you to court?
A: I read everything involved, yes.
Q: And you've had what, a little over a year to concentrate on what people were going to say, didn't you?
Verbatim Report of Proceedings (VRP) (Dec. 11, 2007) at 74-75.
Q: So in the pendency of this trial, you've had access of what the evidence was?
A: I've read the police reports, I've read your discovery, yes.
Q: And you've heard all the testimony so far?
A: So far, yes.
Q: And so you knew all that before you testified?
A: Yes.
Q: And so you knew exactly where your DNA [deoxyribonucleic acid] had been found in the car?
Id. at 79.
[5] The majority follows the reasoning of the Mattson majority. I note the Mattson majority relies only on article I, section 14 of the Hawai`i Constitution, whereas the dissent expands its analysis to also include sections 5 and 10. The Hawai`i Supreme Court has interpreted these provisions as implying a guarantee of fair trial rights. State v. Peseti, 101 Hawai`i 172, 180, 65 P.3d 119 (2003); State v. Apilando, 79 Hawai`i 128, 131, 136, 900 P.2d 135 (1995); Tachibana v. State, 79 Hawai`i 226, 231-32, 900 P.2d 1293 (1995); State v. Santiago, 53 Haw. 254, 259, 492 P.2d 657 (1971). In contrast the Washington Constitution explicitly guarantees the rights, arguably providing greater protection than the Hawai`i Constitution.
[6] "The rule against adverse inferences is a vital instrument for teaching that the question in a criminal case is not whether the defendant committed the acts of which he is accused. The question is whether the Government has carried its burden to prove its allegations while respecting the defendant's individual rights." Mitchell v. United States, 526 U.S. 314, 330, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999) (holding the concerns that mandate the rule against negative inferences at a criminal trial apply with equal force at sentencing).
[7] "[T]he best and most simple explanation for coherent testimony is `sheer innocence.'" William Bradley Smith, Case Note, Criminal ProcedureDefendant's Right To Be Present at Trial Prosecutor's Comments During Summation Regarding Defendant's Opportunity To Tailor Testimony to That of Preceding Witnesses, 68 Tenn. L.Rev. 409, 425 (2001) (quoting Portuondo, 529 U.S. at 85, 120 S.Ct. 1119 (Ginsburg, J., dissenting) ("If a defendant appears at trial and gives testimony that fits the rest of the evidence, sheer innocence could explain his behavior completely.")).
[8] The majority's holding fails to advance the search for truth because it does not consider the fact that testimony is often consistent because it is truthful. See Portuondo, 529 U.S. at 79 n. 1, 120 S.Ct. 1119 (Ginsburg, J., dissenting).
[9] "When a tailoring insinuation based solely on the defendant's presence in the courtroom is made, the jury is told, indirectly, that the defendant is not to be believed simply because he is a defendant." J. Fielding Douthat, Jr., A Right to Confrontation or Insinuation? The Supreme Court's Holding in Portuondo v. Agard, 34 U. Rich. L.Rev. 591, 615 (2000).
[10] "[W]here the exercise of constitutional rights is `insolubly ambiguous' as between innocence and guilt, a prosecutor may not unfairly encumber those rights by urging the jury to construe the ambiguity against the defendant." Portuondo, 529 U.S. at 77, 120 S.Ct. 1119 (Ginsburg, J., dissenting) (citation omitted) (quoting Doyle v. Ohio, 426 U.S. 610, 617, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)).
[11] Jessica Sobania positively identified another man as the perpetrator; this man was never fully investigated by the police. VRP (Dec. 4, 2007) at 42. Additional DNA was found on the steering wheel and dashboard, and it did not match samples collected from Martin, Sobania, or the children. VRP (Dec. 7, 2007) at 176, 187-90.