IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 77803-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MERLIN N. VILLANUEVA-ROSALES, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 22, 2019 |

SCHINDLER, J. — Merlin N. Villanueva-Rosales seeks reversal of the jury conviction for residential burglary. Villanueva-Rosales argues that in closing argument, the prosecutor improperly commented on his constitutional right to remain silent and his right to testify. Because the record does not support his argument, we affirm.

FACTS

Amos Martin-Johnson lives at a house on South Orcas Street in Seattle. Around 11:20 p.m. on May 3, 2017, Martin-Johnson arrived home after work and found his "inside cat" outdoors. After Martin-Johnson entered the home through the locked front door, he heard voices coming from the basement. Martin-Johnson went back outside through the front door and around the side of the house to the exterior basement entry. The doorjamb and the lock were damaged and the basement door was "cracked open a little bit."

Martin-Johnson entered the basement and saw a man, later identified as Merlin N. Villanueva-Rosales, standing at the laundry room counter facing Martin-Johnson while another man was rifling through Martin-Johnson's "clothes" and "grabbing stuff." Martin-Johnson asked them, " 'Hey, guys, what are you guys doing.' " Villanueva-Rosales responded, " 'Hey, we're just looking. We're kind of lost. We're not doing nothing wrong.' " The other man said nothing.

Martin-Johnson said, " 'Oh, yeah? Right. . . . Well, I got some people outside for you guys, so you guys better get the heck out of here.' " Villanueva-Rosales responded again, " 'No, we're just lost, man. We're just looking around. We didn't know.' "

Villanueva-Rosales and the other man walked past Martin-Johnson out the basement door. Martin-Johnson called 911 and followed them "up the hill." The other man ran away. Villanueva-Rosales "turns" and "starts running up the hill" behind the other man. Martin-Johnson ran after the men. Martin-Johnson was able to catch up with Villanueva-Rosales. Martin-Johnson "grabbed his left arm to get him to stop." Villanueva-Rosales "stepped back" and stated, "I'm done, I'm done," and sat down.

After walking back to Martin-Johnson's house, Martin-Johnson asked Villanueva-Rosales how he entered the house. Villanueva-Rosales pointed to the exterior basement door.

After the police arrived, Martin-Johnson went back into the basement. Near where Villanueva-Rosales was standing when Martin-Johnson first saw him, "within arm's reach," was a black "smiley face" backpack that did not belong to him or his roommate. The backpack contained Martin-Johnson's gaming electronics from upstairs.

The State charged Villanueva-Rosales with residential burglary in violation of RCW 9A.52.025.

The State called two Seattle Police Department officers to testify at trial, John Marion and Landon Steiger. Officer Marion testified he arrested Villanueva-Rosales, secured the scene, and began investigating and collecting evidence. During Officer Steiger's investigation, he noticed "several items strewn across the floor" of the basement, including electronics. The doorjamb on the exterior basement door sustained damage and had "pry marks" on it, as did the locking mechanism on the door. Neither officer mentioned any pre-arrest or post-arrest statements made by Villanueva-Rosales.

Villanueva-Rosales testified. Villanueva-Rosales said that at around 9:00 a.m. on May 3, 2017, a man hired him to perform moving and cleaning work. The man told Villanueva-Rosales to meet him at a park at 9:00 p.m. that night. When Villanueva-Rosales and the man arrived at the house, the man tried unsuccessfully to open the front door without a key. The man went around the side of the house and told Villanueva-Rosales to come into the home through the exterior basement door. Villanueva-Rosales testified the man instructed him to wait in the basement while he went upstairs. After a few minutes, the man returned with a bag full of items and put them inside a backpack "right next to where" Villanueva-Rosales was standing.

Villanueva-Rosales testified that when Martin-Johnson came into the basement, he said, " 'What are you doing' " and told them to leave. Villanueva-Rosales left. Villanueva-Rosales said he "crossed the street fast" but did not run away. Villanueva-Rosales testified that he agreed to go back to the house with Martin-Johnson because

he "didn't know what was happening" and had no reason to believe the person who hired him was not supposed to be there.

Martin-Johnson testified in rebuttal. Martin-Johnson testified that after he entered the basement and asked the two men what they were doing, Villanueva-Rosales said "very fast," " 'Hey, man. Sorry, sorry, we're lost.' " Martin-Johnson testified that Villanueva-Rosales never uttered the words "laborer," "mover," or "cleaner." Martin-Johnson testified that he spent several minutes with Villanueva-Rosales before the police arrived and he said nothing about someone hiring him for a job. The jury convicted Villanueva-Rosales of residential burglary.

## ANALYSIS

Villanueva-Rosales asserts prosecutorial misconduct during closing argument deprived him of the right to a fair trial. "The right to a fair trial is a fundamental liberty secured by the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution." In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 703, 286 P.3d 673 (2012).

We review allegations of prosecutorial misconduct during closing argument for abuse of discretion. State v. Lindsay, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). To establish prosecutorial misconduct, Villanueva-Rosales must show that the prosecutor's statements were improper and prejudicial. State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). "Any allegedly improper statement should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). Improper statements followed by a proper objection are

4

prejudicial if the statement had a substantial likelihood of affecting the jury's verdict. Emery, 174 Wn.2d at 760-61. However, if the defendant does not object, any error is waived unless the misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. Emery, 174 Wn.2d at 760-61.

Villanueva-Rosales claims that during closing argument, the prosecutor improperly commented on his constitutional right to testify and the right to silence. The Fifth Amendment to the United States Constitution states, in pertinent part, that no person "shall be compelled in any criminal case to be a witness against himself." This provision applies to the states through the due process clause of the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 8, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964). Article I, section 9 to the Washington State Constitution states, "No person shall be compelled in any criminal case to give evidence against himself." The right against self-incrimination "prohibits the State from forcing the defendant to testify." State v. Easter, 130 Wn.2d 228, 236, 922 P.2d 1285 (1996). "[T]he State may not elicit comments from witnesses or make closing arguments relating to a defendant's silence to infer guilt from such silence." Easter, 130 Wn.2d at 236.

Here, the uncontroverted record establishes Villanueva-Rosales testified and the prosecutor did not comment during cross-examination or closing argument on Villanueva-Rosales' silence or constitutional right to testify. During closing argument, the prosecutor and defense attorney focused on the conflicting testimony and credibility of Martin-Johnson and Villanueva-Rosales. The prosecutor has wide-latitude in closing argument to draw reasonable inferences from the evidence and express those inferences to the jury. State v. Magers, 164 Wn.2d 174, 192, 189 P.3d 126 (2008).

5

"Thus, prosecutors may argue inferences from the evidence, including inferences as to why the jury would want to believe one witness over another." State v. Copeland, 130 Wn.2d 244, 290, 922 P.2d 1304 (1996). It is not improper in closing argument for a prosecutor to comment upon evidence that may bear upon a defendant's credibility. State v. Harvey, 34 Wn. App. 737, 739, 664 P.2d 1281 (1983).

During closing argument, the prosecutor argued the evidence showed the backpack was "found in the house in arm's reach" of Villanueva-Rosales with electronics taken from upstairs. The prosecutor argued that when Martin-Johnson walked into the basement, "the unidentified gentleman is rifling through items."

> Now, [Villanueva-Rosales] [is] not seen rifling through. I submit to you that's because he's just been caught. He sees Mr. [Martin-]Johnson. He's not going to continue what he's doing. He stops, he freezes. Mr. [Martin-]Johnson says, "Hey, guys."
> And he says the first thing he can think of as an excuse, because he knows he's caught. He says, "We're just lost. We're just lost." He's been confronted by an unknown person, and his first response is "We're just lost." It wasn't "Who are you? I'm doing a job." It was "[I] am lost." And then he says, "We don't want any trouble."
> Is that what someone, who's been hired for a moving job, a cleaning job, who is innocently in a house, says?

The prosecutor argued Villanueva-Rosales' testimony was not credible:

> When you add [the facts] all together — flight; a bagful of small, easily pawned or traded electronics in a backpack next to Mr. Villanueva-Rosales' feet; a story about being hired for a job that is not articulated that day when you are confronted by a person in a house, just "I'm lost"; followed by flight — the reasonable inference is Mr. Villanueva-Rosales and that third party were there to commit burglary.
> . . . .
> Ask yourselves, which is the more reasonable version of events?

During defense counsel's closing argument, he explicitly states there are "two sets of competing inferences being drawn from the same facts." Defense counsel

argues the "[w]e're lost" statement was insignificant and attacked Martin-Johnson's

credibility.

> Also, a big deal is made about the statement allegedly made by my client, "I'm lost." And Mr. [Martin-]Johnson told the officers that it was they, implying that both were speaking, but yesterday the testimony seemed to shift a little bit, because he didn't really mean "they" when he told the officers "they."
> And in the heat of the moment where you have a language barrier and when you're about to make a call or are in the midst of making a call and your attention is split, what can that do to memory to begin with?
> Now, the State also made some — made quite a deal about what Mr. Villanueva[-Rosales] failed to say at the scene. In other words, he didn't volunteer the fact that he was cleaning or moving. But while in that basement, Mr. [Martin-]Johnson was not exactly inviting conversation or explanation. He said, "Get the F out. I've got friends outside." And he was loud and stern about it.
>
> . . . .
>
> Now, you are the sole judges of the credibility of the witnesses. What you have here is, in some cases, competing testimony. . . .
> To the extent there is a contradiction, then it's your — it's your job to decide the credibility of one witness versus the other.

In rebuttal, the prosecutor noted Villanueva-Rosales made statements about

being "lost" and emphasized to the jury that "one of your primary jobs in this case is [to]

determine who was credible."

> [PROSECUTOR]: [It was not reasonable that] [t]his was all a big misunderstanding.
> Mr. Villanueva-Rosales was there to commit a burglary. He says now it was a moving job, it was a cleaning job. He did not say that that day.
> [DEFENSE COUNSEL]: Objection. Burden shifting.
> THE COURT: Overruled.
> [PROSECUTOR]: He did not say that that day. He did not tell Mr. [Martin-]Johnson, "Oh, my gosh, this is a huge mistake. I'm so sorry, I was here to do a job." Isn't that the first thing a person would say if they were in a situation like this? Isn't the first thing they would say is, "Oh, my gosh, I'm so sorry. Let me explain what happened"? That's not what happened.

7

A prosecutor is entitled to make a fair response to the defense attorney's closing argument during rebuttal closing argument. In re Pers. Restraint of Caldellis, 187 Wn.2d 127, 143, 385 P.3d 135 (2016). A prosecutor may argue that evidence does not support a defense theory and present a fair response to defense counsel's arguments. State v. Russell, 125 Wn.2d 24, 87, 882 P.2d 747 (1994). And even clearly improper remarks do not require reversal if they were invited by defense counsel and are in reply to his statements, unless the remarks are not in pertinent reply or so prejudicial that a curative instruction would be ineffective. Russell, 125 Wn.2d at 86.

The case Villanueva-Rosales cites, State v. Martin, 171 Wn.2d 521, 252 P.3d 872 (2011), is inapposite. In Portuondo v. Agard, 529 U.S. 61, 73, 120 S. Ct. 1119, 146 L. Ed. 2d 47 (2000), the United States Supreme Court held that a testifying defendant should be treated as other witnesses are treated, observing that comments on a defendant's opportunity to tailor his testimony is appropriate and "sometimes essential." In Martin, our Washington Supreme Court concluded the Washington Constitution provides greater protections than does the Sixth Amendment and expressly adopted the standard articulated by Justice Ruth Ginsburg in her Portuondo dissent. Martin, 171 Wn.2d at 534-36.

Justice Ginsburg approved the "carefully restrained and moderate position" taken by the Second Circuit that allowed a prosecutor "at any stage of a trial to accuse a defendant of tailoring specific elements of his testimony to fit with particular testimony given by other witnesses," but would disallow tailoring arguments "where there is no particular reason to believe that tailoring has occurred and where the defendant has no opportunity to rebut the accusation." Portuondo, 529 U.S. at 77-78 (Ginsburg, J.,

dissenting).  Here, the prosecutor neither questioned Villanueva-Rosales on cross-examination about tailoring his testimony nor argued tailoring in closing argument.

We affirm the jury conviction of Villanueva-Rosales for residential burglary.

WE CONCUR: